UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| In Re: | ) | |
| MELISSA CLARK, | ) | Bankruptcy Case |
| | ) | No. 06-62407-aer13 |
| Debtor. | ) | |
| DAVID C. & MARY C. HOUTS, | ) | Bankruptcy Case |
| | ) | No. 08-62216-aer13 |
| Debtors. | ) | |
| DONALD & JOLEE TAYLOR, | ) | Bankruptcy Case |
| | ) | No. 08-62785-aer13 |
| Debtors. | ) | |
| TED C. & JUDY A. BERGE, | ) | Bankruptcy Case |
| | ) | No. 09-61563-aer13 |
| Debtors. | ) | |
| PHILLIP K. & KELLY D. GALLOWAY, | ) | Bankruptcy Case |
| | ) | No. 09-61595-fra7 |
| Debtors. | ) | |
| KRISTI B. CARAWAY, | ) | Bankruptcy Case |
| | ) | No. 09-61596-aer7 |
| Debtor. | ) | |
| SAMUEL T. & BEVERLY A. BARNARD, | ) | Bankruptcy Case |
| | ) | No. 09-61605-aer7 |
| Debtors. | ) | |

MEMORANDUM OPINION-1

```
 1  |                                    )
    | DAVID A. CHILSON,                  )   Bankruptcy Case
 2  |                                    )   No. 09-61553-aer7
    |                    Debtor.         )
 3  |                                    )
    | JAMES D. MOONEY,                   )   Bankruptcy Case
 4  |                                    )   No. 09-61608-aer13
    |                    Debtor.         )
 5  |                                    )
    | RAYMOND L. & KATHLEEN A. WELLER,   )   Bankruptcy Case
 6  |                                    )   No. 09-61567-aer13
    |                    Debtors.        )
 7  |                                    )
    | JUSTIN D. WILSON,                  )   Bankruptcy Case
 8  |                                    )   No. 09-61309-aer13
    |                                    )
 9  |                    Debtor.         )   MEMORANDUM OPINION
```

This matter comes before the court on orders to show cause in each of the above-captioned cases why attorney Keith Hayes' fees should not be reduced or denied and why his current suspension should not be continued for an additional 90 days. An evidentiary hearing was held on August 3, 2009, after which the matters were taken under advisement.

Background:

On March 26, 2009, this court entered its Memorandum Opinion and Order in Clark, Houts and Taylor suspending attorney Keith Hayes from practice before the United States Bankruptcy Court for the District of Oregon for 90 days (**the March 26th Order**). Under the March 26th Order, the suspension began 60 days from the Order's entry (**the grace period**). During the grace period Mr. Hayes was permitted to take appropriate action to conclude his existing cases or find substitute counsel; he could not, however, file new cases. In addition, as part of the March 26th order, in the Clark case, Mr. Hayes was ordered to disgorge $2,950 to the Chapter 13 Trustee and $750 to legal insurer ARAG, North America,

MEMORANDUM OPINION-2

Inc. by April 20, 2009, all without prejudice to any claims Ms Clark may have to the funds.

On March 31, 2009, Mr. Hayes filed an Amended Motion to Modify the March 26th Order (**the Amended Motion**). The Amended Motion sought authority to file new cases through April 6, 2009. In support of the Amended Motion Mr. Hayes filed a Declaration stating in pertinent part:

> 1. I became aware of the Court's [March 26th] order in this case on March 31, 2009 while checking ECF electronic notification . . . .
>
> 2. At this time, I have a number of clients who have significant financial issues with time pressure on them who need to file for relief under the bankruptcy code. They are clients who have pending garnishments, foreclosure dates and pending lawsuits.
>
> 3. If the cases are not filed in the immediate future, those persons will lose money through garnishment or other seizure, or lose property through foreclosure.
>
> 4. Because of the deadlines involved, it would be logistically impossible for them to find substitute counsel or file the cases pro se with the deadlines they are facing.
>
> 5. Because of the risk of financial hardship and loss involved, and the difficulty of finding substitute counsel, I am asking that the Court modify the [March 26th] Order to provide for an effective date of April 6, 2009.
>
> 6. This is to allow the filing of cases for persons who previously retained me prior to the date of the [March 26th] order and who have a significant deadline approaching.
>
> 7. This declaration is made in good faith, is based on personal knowledge, and not made for the purpose of delay.

Based on the Amended Motion and Declaration, this court entered an order on April 1, 2009, allowing Mr. Hayes to file new cases through

MEMORANDUM OPINION-3

April 3, 2009, but all other provisions of the March 26th Order remained in effect.

### The New Cases:

Between April 1, and April 3, 2009, Mr. Hayes filed <u>35</u> cases on behalf of debtors, 30 under Chapter 7 of the Bankruptcy Code and 5 under Chapter 13. Among them were <u>Berge</u> (Chapter 13); <u>Galloway</u>,(Chapter 7); <u>Caraway</u> (Chapter 7; <u>Barnard</u> (Chapter 7); <u>Chilson</u> (Chapter 7); <u>Mooney</u> (Chapter 13); and <u>Weller</u> (Chapter 13) (collectively, **the new cases**). Mr. Hayes did not notify his clients in the new cases that he had been suspended.

The schedules, statements of financial affairs, plans, proofs of claims and other documents filed in the new cases indicate:

    a) no tax debt subject to collection by levy or otherwise;

    b) no secured debt, no delinquent secured debt or no intent by the debtor(s) to retain the collateral;

    c) no lawsuits or administrative proceedings to which the debtor was a party within one year of the petition, and no judgments obtained by creditors before the one year; and

    d) no property attached, garnished or seized under any legal or equitable process within one year of the petition and no indication that any continuing garnishment, attachment, execution, seizure, forced sale, or levy was pending on the date of the petition.

From the evidence adduced, this court is clearly convinced there was no immediate need or exigency to file any of the new cases.[1]

---

[1] At the August 3rd hearing, Mr. Hayes testified the Galloways were behind or unable to make their mortgage payments, although he admitted there was no foreclosure proceeding in progress. He believed a Chapter 7 filing could delay foreclosure, thereby buying them time to move, catch-up the payments, or work out a loan modification. He testified the Wellers filed their case because the
(continued...)

MEMORANDUM OPINION-4

In the new Chapter 7 cases, Mr. Hayes charged his normal flat fee of $850 and collected either all or a portion of it before the filing. In the new Chapter 13 cases, Mr. Hayes charged his normal flat fee of $4,000 for the entire case and collected $500 before filing, with the remainder to be paid through the Chapter 13 plan.

In the new Chapter 7 cases, the meetings of creditors required under 11 U.S.C. § 341(a)[2] (**meetings**) were set in Salem, Oregon, on May 29, 2009. This was during Mr. Hayes' suspension. Mr. Hayes was aware of this setting, at the latest, on April 3, 2009 (Chilson), and April 6, 2009 (Galloway, Caraway and Barnard), when he received e-service of the notice of bankruptcy filing with the meeting date thereon. Mr. Hayes contracted with attorney R. Brooke Holstedt to appear for him at the meetings,[3] however he waited until a day or two before the meetings to transfer the case files to Mr. Holstedt and then only went over about half of the files with him.

In the new Chapter 13 cases, the confirmation hearing was set for June 16, 2009. Mr. Hayes received e-notice thereof on April 3, 2009 (Berge and Weller), and April 6, 2009 (Mooney), respectively. On May 13,

---

[1](...continued)
amount of their debt created a financial hardship, putting pressure on their monthly budget for other expenditures. The court finds neither of these circumstances constitute an emergency or exigency. In fact, Mr. Weller testified his payments to secured creditors were current and there was no emergency. As to the five other new cases, at the hearing, Mr. Hayes proffered no evidence at all as to any exigency or emergency pending when they were filed. In fact he testified he had not even reviewed the files in preparation for the hearing.

[2] Unless otherwise indicated, all subsequent statutory references are to Title 11 of the United States Code.

[3] Mr. Hayes testified he would be paying Mr. Holstedt from his own funds.

MEMORANDUM OPINION-5

2009, Mr. Hayes received notice that the confirmation hearing in each case had been reset to June 25, 2009. Both of these dates were during Mr. Hayes' suspension. Mr. Hayes did not advise his clients that if objections to confirmation were filed, he would not be able to attend the confirmation hearings. Mr. Weller testified that he first learned of Mr. Hayes' suspension when he called the Chapter 13 Trustee's office before the June 25th hearing to discuss modifications to the plan. Mr. Weller further testified that he had attempted to contact Mr. Hayes beforehand to discuss the Trustee's pending objections to confirmation but his calls were not returned. This court finds Mr. Weller's testimony to be credible.

In Mooney and Berge, no objections to confirmation were filed, accordingly, the confirmation hearing was not held. In Weller, ninety minutes before the June 25th hearing, Mr. Hayes faxed a letter to the court requesting that confirmation hearings that morning, in cases in which he was attorney of record, be continued. The letter stated Mr. Hayes was working on finding substitute counsel for his clients and that Mr. Holstedt, whom he had been working with, was not available for that day's hearings. The Wellers appeared pro se at the hearing. The court set the matter over to allow them to procure new counsel.[4]

Wilson:

The Wilson Chapter 7 case was filed through Mr. Hayes on March 26, 2009. Mr. Hayes charged and received his normal flat fee of $850.

---

[4] After the August 3rd hearing, a minute order was entered requiring Mr. Hayes to refund within 28 days all fees ($500) received in the Weller case.

MEMORANDUM OPINION-6

On June 5, 2009, the Office of the United States Trustee (**UST**) moved to dismiss the case under § 707(b) as an abuse of the provisions of Chapter 7. Before then the UST had repeatedly attempted, unsuccessfully, to contact Mr. Hayes to discuss the motion and obtain documents.

On June 9, 2009, Mr. Hayes received e-mail notice of a July 15, 2009, hearing on the UST's motion. The July 15th hearing was duly convened. At the time, the court's docket indicated no substitution of counsel for Mr. Hayes. No one appeared at the hearing on Mr. Wilson's behalf. Mr. Hayes has offered no evidence as to why substitute counsel had not been procured.

Clark:

Mr. Hayes has not disgorged $2,950 to the Chapter 13 Trustee in Clark as required by the March 26th Order. He testified he was attempting to work out an agreement with the Trustee to make payments from monies due him on other cases.[5] He offered no other excuse or justification (such as inability) for his failure to abide. In light of the fact that Mr. Hayes filed 35 cases by April 3, 2009 (and likely collected some fees in each case, as was his practice) this court infers that he did have the financial ability to comply with the March 26th Order but willfully chose not to do so.

Discussion:

The UST has recommended that all of Mr. Hayes' fees be denied in the matters at bar and that he be suspended for an additional 90 days. For the reasons that follow, this court adopts the UST's recommendations.

---

[5] This, in total disregard of the March 26 order which required payment by April 20, 2009.

MEMORANDUM OPINION-7

Fee Disgorgement:

The court may examine the reasonableness of Mr. Hayes' compensation under § 329(b). "Reasonableness" under § 329(b) is measured by § 330's standards. <u>American Law Ctr. PC v. Stanley (In re Jastrem)</u>, 253 F.3d 438, 443 (9th Cir 2001). The court considers the nature, extent and value of services rendered taking into account all relevant factors including those set out in § 330(a)(3), and excluding those services described in § 330(a)(4)(A). If the compensation exceeds the reasonable value of the services, the court may cancel the agreement or order disgorgement of any fees, to the extent excessive, to the estate (if the fees would have been estate property or were to be paid under a Chapter . . . 13 plan), or to the debtor. § 329(b)(1)-(2).

Even before he filed the new cases, Mr. Hayes was (or should have been) aware the meetings could and the confirmation hearings would, be set during his suspension.[6] By April 6, 2009, his inability to participate in these important hearings was confirmed by court notice.[7]

---

[6] The debtors in the new cases reside either in Polk or Marion County. Because the UST does not staff an office in those counties, meetings may be set up to 60 days from the petition's filing. FRBP 2003(a). In turn, confirmation hearings are set 20 to 45 days from the meeting. § 1324(b)

[7] Mr. Hayes filed his required fee disclosures in the new Chapter 7 cases on April 19, 2009. In the Chapter 13 cases he filed them on April 20, 2009 (<u>Mooney</u> and <u>Berge</u>) and April 26, 2009 (<u>Weller</u>) respectively. His disclosures (and fee agreements where attached) provided he would represent his clients at the meeting, and in the Chapter 13 cases, at the confirmation hearing. By the time the fee disclosures were filed however, Mr. Hayes was aware these hearings fell within his suspension and that he would have to procure substitute counsel. A debtor's attorney has a duty under FRBP 2016 and § 329(a) to disclose the precise nature of his fee arrangement. <u>In re Addison</u>, 2008 WL 1902429, *4 (Bankr. D. Or. 2008). While failing to advise the court
(continued...)

MEMORANDUM OPINION-8

Given these circumstances, it was inappropriate to charge and collect his normal flat fee.

The first three to four months in any Chapter 7 case are pivotal for debtors. The meeting is held. FRBP 2003(a). The case trustee scrutinizes the debtor's schedules and statement of affairs, often requesting follow-up information. Many times the trustee makes demand for turnover of non-exempt assets. The UST conducts its review for abuse under § 707(b), which may lead to the filing of a motion to dismiss. FRBP 1017(e)(1). Parties in interest examine grounds under § 727 to deny the debtor's full discharge, FRBP 4004(a), or grounds under § 523 to except particular debts from discharge. § 523(c); FRBP 4007(c). In Chapter 13, the debtor's payment plan is before the court for confirmation. Objections to confirmation of the plan are addressed. Plan amendments are negotiated. If plan confirmation is contested, a confirmation hearing is held. All of these activities involve interactions with the debtor. All of them have serious downside risks. Debtors employ counsel to protect them from such risks. When counsel charges and collects his "normal flat fee" yet knows, in advance, he must "disappear" for 3 months less than 60 days from the case's filing, that clearly constitutes an unreasonable fee arrangement. The events in several cases at bar bear this out.

---

[7](...continued)
substitute counsel would participate in the meetings may not rise to the level of sanctionable conduct, it provides yet another indicia of Mr. Hayes' cavalier attitude toward his duties to the court and his clients.

MEMORANDUM OPINION-9

As noted above, the meetings in the new Chapter 7 cases fell during Mr. Hayes' suspension. While he did engage Mr. Holstedt to cover for him, Mr. Hayes only delivered his clients' files one to two days beforehand and then only went over half of them with Mr. Holstedt. In Wilson, Mr. Hayes was unavailable to address the UST's § 707(b) inquiries and left his clients unrepresented at the July 15th hearing. In the new Chapter 13 cases, Mr. Hayes was able to attend the meetings. In Weller, however, his suspension barred him from attending the confirmation hearing, yet again he found no one to substitute for him.

In addition, one must bear in mind that, but for Mr. Hayes' deceitful Declaration, he would not have gained the extension to file the new cases in the first place; thus he would not have charged or collected the subject fees. This court is loathe to allow him to profit from his own deceit.

In light of the above, this court will cancel the fee agreements in each of the new cases as well as in Wilson. Mr. Hayes will be ordered to refund all fees received to the respective debtors within 28 days.[8] This refund is without prejudice to the case trustee(s) making a claim to the funds. Within 42 days Mr. Hayes is to file a declaration stating either that (1) he has made the requisite refunds; or (2) explaining in detail why he has not. He is also barred from collecting any future fees in the new cases and Wilson.

/ / / / /

---

[8] The Weller fees are the subject of a previous order. See f.n. #4, supra.

MEMORANDUM OPINION-10

Suspension:

Bankruptcy courts have the inherent power to suspend an attorney provided the attorney is accorded due process. Price v. Lehtinen et. al.(In re Lehtinen), 564 F.3d 1052 (9th Cir. 2009); see also, In re Brooks-Hamilton, 400 B.R. 238, 248-249 (9th Cir. BAP 2009)(noting § 105 and FRBP 9011 as additional sources of a bankruptcy court's power to suspend). In determining reasonable discipline, the court must apply the American Bar Association (ABA) Standards.[9] Id. at 252. The standard of proof in disciplinary proceedings is "clear and convincing." Peugeot v. United States Trustee (In re Crayton), 192 B.R. 970, 975 (9th Cir. BAP 1996).

Under the ABA Standards, to determine an appropriate sanction, the court should consider:

> (1) whether the duty violated was to a client, the public, the legal system or the profession;
>
> (2) whether the lawyer acted intentionally, knowingly or negligently;
>
> (3) whether the lawyer's misconduct caused a serious or potentially serious injury; and
>
> (4) whether aggravating factors or mitigating circumstances exist.

Brooks-Hamilton, supra at 252.

The threshold inquiry is whether a duty was violated. In addition to the duties imposed by the Bankruptcy Code and Rules, attorneys practicing before this court must comply with the standards of

---

[9] ABA Standards for Imposing Lawyer Sanctions (as amended in 1992) (ABA Standards).

MEMORANDUM OPINION-11

conduct required of members of the Oregon State Bar.  LBR 9010-1(a)(2)(A)(incorporating LR 83.7(a)).

In <u>United States Trustee v. Lynn (In re Bellows-Fairchild)</u>, 322 B.R. 675 (Bankr. D. Or. 2005) the court permanently enjoined an attorney from practicing in bankruptcy court for violating his duty to accurately and completely prepare the debtor's schedules and statement of financial affairs.  Similarly, in <u>Brooks-Hamilton</u>, <u>supra</u> the trial court based a six month suspension on a finding under FRBP 9011 that an objection to claim was frivolous and filed for an improper purpose.[10]

Here, Mr. Hayes violated duties to the court, the legal system in general, the profession, the public, his clients and other parties in interest by:

> 1) falsely representing in his Declaration in support of the Amended Motion that there was an immediate need for filing the new cases, in violation of FRBPs 9011(b)(1)(motion must not be filed for improper purpose), and 9011(b)(3)(motion's factual contentions must have evidentiary support), and Oregon Rules of Professional Conduct (ORPC) 3.3(a)(1)("a lawyer shall not knowingly make a false statement of fact . . . to a tribunal" or fail to correct same); 3.3(a)(3)("a lawyer shall not knowingly offer false evidence"); 8.4(a)(3)(a lawyer shall not engage in conduct involving dishonesty that reflects adversely on lawyer's fitness to practice); and 8.4(a)(4)(a lawyer shall not engage in conduct prejudicial to the administration of justice);
>
> 2) requesting, while suspended, a continuance of the June 25, 2009, confirmation hearings, in violation of ORPC 5.5(a)(a lawyer shall not practice law in violation of the subject jurisdiction's regulation of the legal profession);
>
> 3) failing to advise his clients of his suspension and failing to facilitate the retention of substitute counsel, in

---

[10] In <u>Brooks-Hamilton</u>, the Appellate Panel remanded because the trial court did not consider the ABA standards in determining the extent of the sanction; however, it upheld the finding that some discipline was appropriate.

MEMORANDUM OPINION-12

violation of Oregon State Bar Rule of Procedure (BR) 6.3(b) (a suspended lawyer must immediately take all reasonable steps to avoid foreseeable prejudice to any client); and ORPCs 1.3 (a lawyer shall not neglect a legal matter entrusted to him); and 1.4(a) ("a lawyer shall keep a client reasonably informed about the status of a matter"). See also; Matter of Kraus, 295 Or. 743, 670 P.2d 1012 (1983) (in appropriate circumstances, suspended attorneys have a duty to advise clients of suspension);

4) charging his normal fees, in violation of § 329(b) and ORPC 1.5(a)(a lawyer shall not enter into an agreement for, charge or collect a clearly excessive fee); and

5) willfully failing to abide by the March 26th Order to disgorge $2,950 to the Chapter 13 Trustee.

The court next examines Mr. Hayes' mental state at the time of the misconduct. Under the ABA Standards an attorney can act "intentionally," "knowingly," or "negligently." "'Intent' is the conscious objective or purpose to accomplish a particular result." ABA Standards (Definitions). "'Knowledge' is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." ABA Standards (Definitions). "'Negligence' is the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." ABA Standards (Definitions).

The court finds Mr. Hayes acted "intentionally." In In re Conduct of Campbell, 345 Or. 670, 687, 202 P.3d 871, 881 (2009), the Oregon Supreme Court held a finding of "intentional" conduct requires a showing that "the result the accused intended was not the act taken but the harmful (to others) or beneficial (to the accused) effect of that

MEMORANDUM OPINION-13

act." Here, Mr Hayes, purely for his own economic gain (that is, to collect more and clearly excessive fees), intentionally misled the court as to the necessity of immediately filing the new cases. In failing to advise his clients of his suspension, he intended to protect his reputation (and prospects for future fees) at the expense of candor and full disclosure to his clients. In failing to procure substitute counsel in Wilson and Weller, he intentionally neglected his clients. By failing to pay the funds ordered disgorged in Clark, he again protected his own pocketbook at his clients' and their creditors' expense.

Next, the court examines whether Mr. Hayes' misconduct caused a serious or potentially serious injury. "'Injury' is harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct." ABA Standards (Definitions). Here, Mr. Hayes' conduct caused serious injury. His intentionally false Declaration seriously undermined the integrity of the bankruptcy system as well as the legal system as a whole, Lynn, supra at 682, as did his practice of law while suspended and his intentional failure to abide by the March 26th disgorgement order. His intentional neglect caused serious or potentially serious injury to his clients. His collection of excess fees seriously injured both his clients and their creditors.

Finally, the court must consider whether aggravating factors or mitigating circumstances exist. Aggravating factors are "considerations or factors that may justify an increase in the degree of discipline to be imposed." ABA Standard 9.21. Here, multiple aggravating factors are present, including a dishonest or selfish motive, multiple offenses, a

MEMORANDUM OPINION-14

pattern of misconduct, prior disciplinary offenses[11] and indifference to making restitution. ABA Standards 9.22 (a)-(d),(j). Mitigating factors are "considerations or factors that may justify a reduction in the degree of discipline to be imposed." ABA Standard 9.31. Mr. Hayes did not advance any particular mitigating factor. The court has reviewed the enumerated factors in ABA Standard 9.32 (a)-(m) and finds that none apply.

Considering all the relevant ABA standards, the court determines that a suspension of 90 days, beginning August 24, 2009, is appropriate.[12]

The above constitutes the court's findings of fact and conclusions of law under FRBP 7052. An order consistent herewith shall be entered.

*albert E. Radcliffe*

ALBERT E. RADCLIFFE
Bankruptcy Judge

---

[11] Mr. Hayes' prior transgressions are set out in detail in In re Clark, 2009 WL 936666 (Bankr. D. Or. 2009) and In re Addison, 2008 WL 1902429 (Bankr. D. Or. 2008).

[12] Ninety days was the maximum period noticed in the Orders to Show Cause and thus the court is bound by this limit. However, under the ABA Standards, a more severe sanction is probably indicated. See, ABA Standards 2.3 (suspensions should generally be a minimum of six months); 4.41(c) (disbarment is generally appropriate for pattern of neglect causing serious injury); 6.11(disbarment is generally appropriate for intentional false statements to the court causing serious injury or significant adverse effect on legal proceeding); 8.1(b)(disbarment is generally appropriate for intentional misconduct causing injury after prior discipline for similar misconduct); 6.21 (disbarment is generally appropriate for a knowing violation of court order with intent to benefit personally, which causes serious injury).

MEMORANDUM OPINION-15